1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT
8                        CENTRAL DISTRICT OF CALIFORNIA
9
10  SANCO GRANT, JR.,                    )
11                                       )   Case No. CV 06-7462- JCR
                        Plaintiff,       )
12                                       )   MEMORANDUM OPINION
13       vs.                             )   AND ORDER
                                         )
14  MICHAEL J.ASTRUE,[1]                 )
    Commissioner of the Social          )
15  Security Administration,            )
                                         )
16                      Defendant.       )
    _____        )
17
18       Sanco Grant, Jr. ("Plaintiff"), seeks review of the decision of Michael J.
19  Astrue ("Defendant"), the Commissioner of the Social Security Administration,
20  denying his application for Disability Insurance Benefits ("DIB").  As discussed
21  below, this Court[2] reverses and remands the decision of the Commissioner.
22
23  I.    **PROCEEDINGS**
24  _____
25       [1] On February 12, 2007, Michael J. Astrue became the Commissioner of the
    Social Security Administration.  Thus, Michael J. Astrue is substituted for
26  Commissioner Jo Anne B. Barnhart.  *See* Fed. R. Civ. P. 25(d).
27       [2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the
28  Magistrate Judge conducting any and all proceedings in the instant matter and
    ordering the entry of final judgment.

                                        1

1   Plaintiff filed a Complaint on November 21, 2006, seeking review of the
2   Commissioner's denial of his application for DIB.  On November 2, 2007,
3   Defendant filed the certified Administrative Record ("AR") and an Answer.  On
4   July 20, 2007, the parties filed a Joint Stipulation ("JS") in accordance with the
5   Court's Case Management Order.  Thus, this matter is now ready for decision.

6   As the Court advised the parties in its Case Management Order, the decision
7   in this case will be made based on the pleadings, the AR, and the JS filed by the
8   parties.  In accordance with Federal Rule of Civil Procedure 12(c), the Court will
9   determine which party is entitled to judgment under the standards set forth in 42
10  U.S.C. § 405(g).

11  The Memorandum Opinion and Order shall constitute the Court's findings
12  of fact and conclusions of law.

13

14  **II.    BACKGROUND**

15  On May 20, 2002, Plaintiff filed an application for DIB, alleging disability
16  due to, among other things, chronic back pain.  (AR at 67-69.)  The application
17  was denied initially (*id*. at 52-55), and again on reconsideration (*id*. at 57-60).
18  After a hearing was held on August 21, 2003, Administrative Law Judge Eric
19  Benham ("ALJ") issued a decision unfavorable to Plaintiff on September 15, 2003.
20   (*Id*. at 247-54.)  On October 14, 2003, Plaintiff timely filed a Request for Review
21  of Hearing Decision.  (*Id*. at 271-72.)  By Order dated July 28, 2004, the Appeals
22  Council vacated the September 15, 2003, decision due to failure of the ALJ to give
23  an adequate pain evaluation, and remanded the matter for a new hearing and
24  decision.  (*Id*. at 276-78.)  A second hearing was held before the same ALJ on June
25  30, 2005, whereby the ALJ issued a second decision on December 14, 2005, that
26  was also unfavorable to Plaintiff.  (*Id*. at 20-28.)

27  As reflected in his December 14, 2005, hearing decision, the ALJ found,
28  *inter alia*, that Plaintiff's back pain qualified as a "severe" impairment, which

2

1   prevented Plaintiff from performing his past relevant work as a pile driver. (*Id*. at
2   27.) However, the ALJ determined that Plaintiff retained the residual functional
3   capacity ("RFC") to perform a significant range of light work (*id*. at 27-28) and
4   could lift or carry up to 20 pounds occasionally or 10 pounds frequently (*id*. at 27).
5   The ALJ also determined that Plaintiff was "limited to standing for four hours of
6   eight, sitting four hours of eight, requires a sit/stand option, and can less than
7   occasionally stoop, crouch, crawl, kneel, and stand." (*Id*.)

8   Based on the RFC determination and the Vocational Expert's ("VE")
9   testimony, the ALJ concluded Plaintiff was not under a period of disability as
10   defined in the Social Security Act at any time through the date of the ALJ's
11   decision. (*Id*. at 28.) Therefore, Plaintiff was not entitled to disability benefits.
12   (*Id*.)

13   Plaintiff filed a request for review with the Appeals Council (*id*. at 19), and
14   on September 27, 2007, the Appeals Council denied review, thereby making the
15   decision of the ALJ a final decision of Defendant in this matter (*id*. at 7-10).

16   On November 21, 2006, Plaintiff timely filed the instant action, seeking
17   judicial review of the denial of benefits by Defendant.

18

19   **III.   DISPUTED ISSUES**

20   Plaintiff raises the following grounds for reversal and/or remand:

21   1.   Whether the ALJ's rejection of the opinions of treating
22        physician Kushner and consultative orthopedist Styner was
23        based on proper legal standards and supported by substantial
24        evidence; and

25   2.   Whether the ALJ's rejection of Plaintiff's credibility was based
26        on proper legal standards and supported by substantial

27   ///

28   evidence.

3

1 | (JS at 10.)

2

3 | **IV.   STANDARD OF REVIEW**

4 | Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

5 | to determine whether the Commissioner's findings are supported by substantial

6 | evidence and whether the proper legal standards were applied.  *DeLorme v.*

7 | *Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

8 | than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402

9 | U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d

10 | 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a

11 | reasonable mind might accept as adequate to support a conclusion."  *Richardson*,

12 | 402 U.S. at 401 (citation omitted).

13 | The Court must review the record as a whole and consider adverse as well as

14 | supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).

15 | Where evidence is susceptible of more than one rational interpretation, the

16 | Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450,

17 | 1452 (9th Cir. 1984).

18

19 | **V.   DISCUSSION**

20 | **A.   Reversal Is Warranted Based on the ALJ's Error with Respect to**

21 | **the Opinions of Treating Physician Kushner and Consultative**

22 | **Orthopedist Styner**

23 | **1.   The ALJ's Rejection of the Opinion of Treating Physician**

24 | **Kushner Was Not Based on Proper Legal Standards**

25 | Plaintiff contends that the ALJ erred because the ALJ failed to provide an

26 | accurate and legally sufficient rationale for rejecting the opinion of treating family

27 | practitioner, Dr. Pamela R. Kushner.  (JS at 10-11.)

28 | a.   Dr. Kushner's findings

4

1    The records indicate Plaintiff first saw Dr. Kushner in April 1999 for

2    laboratory tests.  (AR at 196-97.)  Dr. Kushner's chart notes from June and

3    September 2001 reflect that Plaintiff was on the medication Vicodin and

4    complained of constant low back and left hip pain since a November 2000 injury

5    sustained at work.  (*Id*. at 139-40, 143.)  Dr. Kushner ordered Plaintiff to undergo

6    several procedures on September 18, 2001, including an x-ray and an MRI of the

7    lumbar spine.  (*Id*. at 160, 162.)  The x-ray was normal (*id*. at 160), but the MRI

8    revealed moderate facet disease at L5-S1 and mild degenerative disc disease at

9    L4-5 with "minimal retrolisthesis of L4 over L5 and a small posterior

10   disc-osteophyte complex."  (*Id*. at 162.)  An x-ray of Plaintiff's left hip ("Hip X-

11   Ray") taken on the same day revealed an avulsion of a bone fragment.  (*Id*. at 159.)

12   On October 9, 2001, Plaintiff underwent a bone scan, which revealed "mild

13   abnormality at the left side of L3," degenerative joint disease, wrist degeneration,

14   and an "abnormal tracer accumulation."  (*Id*. at 158.)

15   On August 14, 2003, Dr. Kushner completed a Medical Assessment Form of

16   Ability to do Work-Related Activities.  (*Id*. at 244-46.)  Therein, she described

17   Plaintiff's condition as "chronic back pain [which] affects daily activities."  (*Id*. at

18   244.)  Dr. Kushner also estimated that Plaintiff could not carry or lift more than

19   five pounds and could never climb, stoop or crouch, but could occasionally

20   balance, kneel, and crawl.  (*Id*. at 244-45.)  Most notably, the doctor indicated that

21   Plaintiff could not sit, stand, or walk for more than four hours each in an eight hour

22   day, and that none of those three activities could last for more than one hour at a

23   time.  (*Id*. at 246.)

24   On March 24, 2004, Dr. Kushner completed a Multiple Impairments

25   Questionnaire, wherein she diagnosed Plaintiff with low back pain and lumbar

26   strain.  (*Id*. at 302.)  She supported her diagnosis with the MRI and Hip X-Ray

27

28

taken on September 18, 2001, and the bone scan taken in October 2001.[3]  (*Id*.)  Dr. Kushner noted that Plaintiff, in an eight-hour day, could sit and "stand/walk" no more than one hour each, and that he had to be able to get up and move around every one to two hours.  (*Id*. at 304-05.)  Dr. Kushner further stated that Plaintiff's condition would interfere with the ability to keep his neck in a constant position, and thus, found that Plaintiff was unable to work at a full-time, competitive job that would require such activity on a continuous basis.  (*Id*. at 307.)  Dr. Kushner noted that Plaintiff frequently experienced pain, fatigue, or other symptoms that would interfere with attention and concentration, and that she expected Plaintiff's impairments to be ongoing and to last at least twelve months.  (*Id*.)  The doctor further found that he could tolerate only a "low stress" work position and that Petitioner would likely miss more than three workdays a month due to his symptoms.  (*Id*. at 308.)

### b.  Legal standards

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 880 F.2d 1086, 1089 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1986)).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and

---

[3]  While not definitively stated, it appears to the Court that the bone scan in question refers to the bone scan taken on October 9, 2001.  *See* discussion *supra*.

convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

c.   <u>Analysis</u>

The ALJ discussed the medical records of Dr. Kushner, commenting that Dr. Kushner's assessment of Plaintiff's extreme limitations were unsupported by any objective evidence:

> In reaching this conclusion, I have considered the opinions of Drs. Kushner and Styner.[4] Dr. Kushner's [diagnosis of Plaintiff's] extreme limitations continue to be unsupported by any objective evidence.

(AR at 26) (citations omitted.)

The reason cited by the ALJ for rejecting Dr. Kushner's medical opinions – that Plaintiff's extreme limitations are unsupported by any objective evidence – is the same kind of non-specific language rejected by the Ninth Circuit as insufficient. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Here, the ALJ failed to provide any specific and legitimate reason for disregarding the opinion of Dr. Kushner. *See Magallanes*, 881 F.2d at 753 (finding

---

[4] The ALJ's assessment of Dr. Styner's opinions is addressed in the next section. *See infra* Part V.A.2.

that the ALJ could meet the burden of setting forth specific reasons for rejecting treating physician's opinion by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings). The ALJ fails to explain why the opinion of Dr. Kushner, who has been the Plaintiff's treating physician since April 1999, should not be given greater weight in determining Plaintiff's disability. The ALJ also does not set forth his interpretations of the medical evidence, and why his interpretations, rather than Dr. Kushner's, are correct. Additionally, to the extent that the ALJ questioned the objective basis for Dr. Kushner's opinion, he should have inquired further of Dr. Kushner as to her opinion. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (finding that if the ALJ needed to know the basis of a doctor's opinion, he had a duty to conduct an appropriate inquiry by subpoenaing the doctor, submitting further questions or continuing the hearing); *see also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (finding ALJ's duty to fully and fairly develop the record exists even when the claimant is represented by counsel).

From a review of the ALJ's December 14, 2005, decision, it appears the ALJ wholly rejected or at least discounted the opinion of Dr. Kushner in favor of "medical signs and laboratory findings." (AR at 24.) In the ALJ's decision, he stated the following: "[Plaintiff's] EMG/nerve conduction studies were normal, his myelogram with CT was normal, and his MRI showed only minor abnormality at only the L4 level (Exhibit 10-F: 5). A September 9, 2002 MRI showed no basis for the pain and significant limitation [Plaintiff] asserts he continues to have (Exhibit 16-F)." (*Id*.)

However, the objective evidence in this case establishes that Plaintiff suffered from several physical abnormalities, including degenerative disc disease (*id*. at 162), avulsion of a bone fragment (*id*. at 159), degenerative joint disease (*id*. at 158), and reproduction of pain with "obvious fissuring and leakage" (*id*. at 119), all of which are reasonably expected to cause and/or produce pain. *See Dodrill v.*

8

*Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (finding that once a claimant produces medical evidence which is reasonably likely to cause the alleged pain, the ALJ may only reject it by giving specific reasons).  The ALJ appears to discredit the significance of these medical findings, without any medical foundation, and inappropriately substitutes his own opinion for the medical judgment of Plaintiff's treating physician. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for an ALJ to substitute his own medical judgment for that of a treating physician).

Furthermore, the ALJ stated that the Plaintiff's "myelogram with CT was normal." (AR at 24.)  However, the CT myelogram taken on January 14, 2002, showed "mild bilateral facet osteoarthritis," and "mild diffuse disc bulge with mild ventral indentation on the thecal sac at the L4-5 level," which does not appear to constitute a "normal" finding. (*Id*. at 238-39.)

Additionally, the ALJ, citing Exhibit 16-F, refers to a "September 9, 2002," MRI that he believes "showed no basis for the pain and significant limitation the claimant asserts he continues to have." (*Id*. at 24.)  However, the MRI referred to in Exhibit 16-F was actually taken on June 2, 2004.[5] (*Id*. at 380.)  Exhibit 16-F, prepared by Dr. Dianna Chooljian, states the following:

> Clinical Indications: Disc herniation.
>
> Findings: . . . Signal intensities of the vertebral bodies and the discs are noteworthy for mild L4-5 dorsal intercalated segmental instability disc dessication. . . . [T]hecal sac deformities or neural foraminal stenosis is noted. . . . Mild degenerative retrolisthesis of L4 and L5 is noted with a minimal ventral broad-based bulge. . . .

---

[5] Moreover, the record before the Court does not evidence any other MRIs taken on September 9, 2002.

1    Impression:

2        1.    Minimal retrolisthesis of L4 and L5 which is a

3              degenerative with disc dessication.

4    (*Id*. at 380.)

5        Dr. Chooljian's report also appears to contradict the ALJ's findings of "no

6    basis for the pain and significant limitation" Plaintiff alleges.  (AR at 24.)  Thus, it

7    is error for the ALJ to form a medical opinion concluding that the results of the

8    MRI are normal without any medical authority or explanation to support that

9    opinion.

10       Because the ALJ failed to give a specific and legitimate reason based on the

11   substantial evidence of the record for discounting Dr. Kushner's opinion, the Court

12   finds the ALJ erred.

13       **2.    The ALJ's Rejection of the Opinion of Consultative**

14       **Orthopedic Styner Was Improper**

15       Plaintiff claims that the ALJ's stated reasons for rejecting the opinion of Dr.

16   James Styner are also illegitimate.  (JS at 12.)  Plaintiff argues that the objective

17   medical evidence sufficiently supports Dr. Styner's opinion and that the ALJ is not

18   qualified to render purely medical judgments.  (*Id*.)

19       The ALJ rejected Dr. Styner's medical opinions and conclusions, stating as

20   follows:

21       Dr. Styner also finds that the claimant has extreme

22       limitations.  However, these conclusions are based on

23       subjective complaints rather than any objective evidence.

24       I note Dr. Styner found the claimant had only a slight

25       limitation in spinal range of motion, normal reflexes, and

26       normal muscle strength, but stated that his back pain

27       limitation limits him to lifting less than ten pounds.  The

28       nexus between the claimant's benign objective testing

10

1   results and extremely limited residual functional capacity

2   assessment is tenuous and poorly explained.

3   (AR at 26) (citations omitted).

4                    a.    Dr. Styner's findings

5          On February 16, 2005, Plaintiff was examined and evaluated by Dr. Styner,

6   a consultative examining orthopedist, for Plaintiff's low back pain.  (*Id*. at 359.)

7   Plaintiff indicated to the doctor that his back pain was "sharp and constant" with

8   "radiating pain down both legs, left greater than right, extending down to the feet."

9   (*Id*. at 360.)   Plaintiff also complained of stiffness in his pelvis, pain in his left hip,

10  neck, and right shoulder, as well as left knee pain.  (*Id*. at 360-61.)  Dr. Styner

11  reviewed Plaintiff's treatment records and diagnostic examinations, including the

12  bone scan, the CT scan, the discogram, and the MRI reports.  (*Id*. at 366-68.)

13         Dr. Styner diagnosed Plaintiff with the following: cervical spine strain; left

14  shoulder inflammatory process; lumbar strain with L4 disc herniation; twisting

15  injury of left knee; and avulsion fracture of left hip.  (*Id*. at 367.)  In light of these

16  impairments, Dr. Styner opined that Plaintiff could not return to his past relevant

17  work as a pile driver and further, that he could not stand or walk more than three

18  hours a day with the need to sit down every thirty to forty-five minutes for twenty

19  minutes.  (*Id*. at 368-69.)  Plaintiff also could not sit more than four hours a day

20  with the need to get up every hour for about fifteen to twenty minutes, and the need

21  to lie down to ease the pressure on his back after three to four hours.  (*Id*.)

22  Furthermore, the doctor stated that Plaintiff could lift and carry no more than ten

23  pounds occasionally.  (*Id*. at 369.)  Finally, Dr. Styner indicated that, due to pain,

24  Plaintiff was not capable of regular attendance at work, and would be expected to

25  miss work at least four days a month due to his ongoing symptoms and another

26  ///

27  ///

28

11

1   two days per month for medical treatment.[6]  (*Id*. at 370.)

2                b.   Analysis

3        Generally, the opinions of examining physicians, such as Dr. Styner, are

4   afforded more weight than those of non-examining physicians, and the opinions of

5   examining non-treating physicians are afforded less weight than those of treating

6   physicians.  20 C.F.R. § 404.127(d)(1)-(2).  The ALJ may reject an uncontroverted

7   opinion of an examining physician only for clear and convincing reasons.  *See*

8   *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

9        As with Dr. Kushner, the ALJ also stated that Dr. Styner's conclusions

10  regarding Plaintiff's extreme limitations are not based on any objective evidence.

11  (AR at 26.)  However, the ALJ does state clear reasons for rejecting Dr. Styner's

12  conclusions, namely that the "nexus between the claimant's benign objective

13  testing results and extremely limited residual functional capacity assessment is

14  tenuous and poorly explained."  (*Id.*)  While the Court finds that the ALJ's reasons

15  for rejecting Dr. Styner's prognosis are somewhat clearer than the reasons given

16  for rejecting the opinion of Dr. Kushner, it nonetheless concludes that the reasons

17  are not convincing.  Additionally, the Court finds the ALJ's reasons are not based

18  on substantial evidence in the record.

19       As discussed in Part IV.A.1, *supra*, it is inappropriate for the ALJ to form a

20  medical conclusion concerning Plaintiff's physical exam results.  While it is true

21  that certain tests might have shown normal reflexes and normal muscle strain, the

22  ALJ is not equipped to equate these findings to overall good health and range of

23  motion.  This is especially true in light of all of the other objective evidence in the

24  record supporting Plaintiff's claims, including his MRI reports, bone scan, Hip X-

25

26  ───────────────

27       [6]  At the hearing on June 30, 2005, the VE opined that a hypothetical
     individual with the functional capacity described by Dr. Styner would not be able
28  to work.  (*Id*. at 452-53.)

                                    12

1   Ray, discogram, and CT myelogram.

2       Moreover, the ALJ states that Dr. Styner failed to fully explain the

3   connection between Plaintiff's test results and extreme limitations.  However, if the

4   ALJ required additional explanation, he should have inquired of Dr. Styner as to

5   the basis for the doctor's opinion.  Instead, the ALJ improperly rejected Dr.

6   Styner's findings, and rendered his own medical judgment without setting forth

7   any contradictory medical opinions.  *See Pitzer*, 908 F.2d at 506 (finding that the

8   ALJ must give clear and convincing reasons for rejecting the opinion of an

9   examining physician where it is uncontradicted).

10      Because the ALJ failed to provide clear and convincing reasons for rejecting

11  the opinion of Dr. Styner, the Court finds that the ALJ erred.

12      **B.**     **The ALJ Did Not Make a Proper Credibility Determination**

13              **Regarding Plaintiff's Testimony**

14      Plaintiff contends that the ALJ discredited the veracity of Plaintiff's

15  subjective complaints based on three factually inaccurate rationales.  (JS at 16.)

16  For the reasons discussed herein, the Court agrees.

17      As an initial matter, the ALJ is not required to blindly accept as true every

18  allegation made by a plaintiff.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

19  However, where the plaintiff has produced objective medical evidence of an

20  impairment which could reasonably be expected to produce some degree of pain

21  and/or other symptoms, and the record is devoid of any affirmative evidence of

22  malingering, the ALJ may reject the plaintiff's testimony regarding the severity of

23  his pain and/or other symptoms only if the ALJ makes specific findings stating

24  clear and convincing reasons for doing so.  *Cotton v. Bowen*, 799 F.2d 1403, 1407

25  (9th Cir. 1986); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996);

26  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d

27  341, 343 (9th Cir. 1991).  Once the plaintiff produces this medical evidence, he

28  does not need to produce findings that support the severity of pain.  *Bunnell*, 947

F.2d at 343.  Moreover, the ALJ may not discredit the plaintiff's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.  *Id.*

If the ALJ finds a plaintiff's testimony as to the severity of pain and impairments unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  *See Bunnell*, 947 F.2d at 345-46.  To determine whether a plaintiff's subjective testimony of his symptoms is credible, the ALJ may consider, among other things, the following evidence:  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *Smolen*, 80 F. 3d at 1284; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing factors such as (1) a claimant's reputation for truthfulness; (2) inconsistencies either in his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains).  If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Since neither the ALJ nor the Commissioner has cited any affirmative evidence of malingering in the record, the issue before the Court is whether the reasons given by the ALJ for rejecting Plaintiff's testimony regarding his impairments constitute clear and convincing reasons.  The Court concludes that the three principle reasons given by the ALJ for his adverse credibility determination do not satisfy this standard.

### 1.   Plaintiff's Statements as to His Pain Medication

First, the ALJ questioned the consistency of Plaintiff's statements as to his pain medication. (AR at 24.) The ALJ noted that in certain evidentiary materials, Plaintiff had testified to taking large amounts of pain-relieving medication. (*Id*.) However, the ALJ then noted that Plaintiff had denied the use of any medication to consultative examiner, Dr. H. Harlan Bleecker, which "suggests dishonesty." (*Id*.) Indeed, Dr. Bleecker's September 3, 2002, report indicates that "[t]he patient is not taking any medication at this time." (AR at 202.) However, that statement is ambiguous, as it could very well mean that Plaintiff had not taken any medication "at the time" of the examination so that his symptoms would not be masked. Another possibility is that it is simply a typographical error in which Dr. Bleecker failed to change boilerplate language when drafting his report. Indeed, the report does not indicate that Plaintiff specifically told Dr. Bleecker he was not on medication. (*See id*.) The ALJ could have easily inquired of Plaintiff and/or Dr. Bleecker in order to clarify this issue.

Furthermore, the ALJ's findings are not supported by the substantial evidence in the record. With the exception of Dr. Bleecker's rather ambiguous report, all of the other evidence indicates that Plaintiff was consistently taking medication. In June 2002, Plaintiff completed a Pain Questionnaire, wherein he noted that he was taking Vicodin, Motrin, Ultracet, and Neurontin. (*Id*. at 90.) In Dr. Kushner's medical records, she indicated that Plaintiff was taking, among other things, Neurontin, Ultracet (*id*. at 131), Vicodin (*id*. at 133), and ibuprofen (*id*. at 135). In 2003, Plaintiff testified at the administrative benefits hearing to taking numerous medications including Neurontin, Zoloft, and Vicodin. (*Id*. at 425, 429-30.) In 2004, Dr. Moses stated in his medical report that Plaintiff has been on medication. (*Id*. at 353.) In 2005, Dr. Styner listed in his report numerous medications that Plaintiff was currently taking, including Vicodin and Neurontin. (*Id*. at 362.) Also, Dr. Babajanians noted in his medical report that Plaintiff was

1   taking ibuprofen, Vicodin, Zoloft, and Lotensin.  (*Id*. at 388.)

2         Looking at the substantial evidence in the record, the records show that

3   Plaintiff was taking several kinds of medication to allow him to cope with his

4   condition.  The ALJ relies on a single medical record -- which is completely

5   inconsistent with all of the evidence in the other medical records -- to prove

6   Plaintiff's "dishonesty" as to his use of medication.  The ALJ's reliance does not

7   constitute a "clear and convincing" reason to reject Plaintiff's testimony in light of

8   the substantial evidence as to his medication use.  Accordingly, the Court

9   concludes that the ALJ erred by discrediting Plaintiff's statements concerning his

10  pain medication.

11              **2.     Range of Daily Activity**

12        Second, the ALJ opined that Plaintiff's "range of daily activity is not

13  consistent with a finding of total disability."  (AR at 25.)  In support of this

14  determination, he noted that Plaintiff admits "he can stand for an hour at a time,

15  can sit two hours at a time, and can walk a block.  Plaintiff can do household

16  chores, care for his own personal needs, drives a car, and can do errands without

17  assistance."  (*Id*.)

18        However, Plaintiff's testimony indicates that his daily living has been

19  limited by his pain and other symptoms.  For example, Plaintiff indicates that he

20  can no longer jog, do any heavy lifting, pull or push, and will have to stop many

21  activities due to pain after ten to fifteen minutes.  (*Id*. at 91.)  Plaintiff is limited to

22  sedentary activities, which has led to depression, high blood pressure, and high

23  cholesterol.  (*Id*. at 95.)  Plaintiff cannot walk over fifteen minutes and cannot

24  stand over half an hour without pain.  (*Id*. at 97.)  Plaintiff's wife does the primary

25  household chores, including cleaning and the laundry.  (*Id*. at 361.)  Although

26  Plaintiff is able to carry groceries for a short distance, he is only able to lift up to a

27  gallon of milk; attempting to lift heavier items creates the possibility of injuring his

28  back or increasing his pain.  (*Id*.)  Plaintiff no longer mows the lawn or does any

16

1   other type of yard work. (*Id*.) He must take pain medication every four hours, and

2   must lie down for two hours because of the drowsiness. (*Id*.) Plaintiff also

3   indicates that he can drive two hours, but develops stiffness as a result of this

4   activity. (*Id*.)

5       Moreover, the ALJ's opinion does not explain how the activity of

6   performing household chores evidences an ability to perform appropriate work

7   activities on a regular and continuing basis. *See* Social Security Ruling 96-8p;

8   *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[T]he mere fact that a

9   plaintiff has carried on certain daily activities, such as grocery shopping, driving a

10  car, or limited walking for exercise, does not in any way detract from her

11  credibility as to her overall disability."); *Gonzalez v. Sullivan*, 914 F.3d 1197, 1201

12  (9th Cir. 1990) (holding that daily activities may not be relied upon to support an

13  adverse credibility determination unless the ALJ makes an explicit finding to the

14  effect that plaintiff's ability to perform those activities translated into the ability to

15  perform appropriate work activities on an ongoing and daily basis); *Fair v. Bowen*,

16  885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that

17  claimants be utterly incapacitated to be eligible for benefits . . . and many home

18  activities are not easily transferable to what may be the more grueling environment

19  of the workplace, where it might be impossible to periodically rest or take

20  medication.").

21      Accordingly, the Court concludes that the ALJ erred by discrediting

22  Plaintiff's testimony based on his range of daily activity.

23                    **3.    Plaintiff's Refusal to Undergo Surgery**

24      Finally, the ALJ cites to the fact that Plaintiff has refused surgery as a reason

25  to further discredit his veracity. (AR at 24.) A refusal to undergo a significant and

26  risky procedure such as spinal surgery is not inherently unreasonable, nor should it

27  serve to discredit one's assertions of pain. *See Nichols v. Califano*, 556 F.2d 931,

28  933 (9th Cir. 1977) ("A claimant under a disability need not submit to all

17

1   treatment, no matter how painful, dangerous, or uncertain of success, merely

2   because one physician believes that a remedy may be effective."). In determining

3   whether claimant's refusal to undergo surgery is justified, the following factors

4   should be considered: (1) the physician's outlook as to the success of the treatment;

5   (2) the nature of the treatment or surgery; (3) the severity of ailments; and (4) the

6   claimant's age, background and medical history. *Nichols*, 556 F.2d at 933.

7        In this case, Dr. Styner opined that surgery would not necessarily be

8   successful. (AR at 370.) He stated in his report that while the Plaintiff was

9   "considered a surgical candidate[,] . . . there [was] no expectation that even with

10  optimal results that he will be able to resume his rather arduous work activities, or

11  any work duties on a regular 8 hours a day, 5 days a week basis." (*Id.*) As to the

12  nature of the treatment, spinal and/or back surgery can be dangerous and the results

13  uncertain. *See Schena v. Sec'y of Health & Human Servs.*, 635 F.2d 15, 20 (1st

14  Cir. 1980). "A patient may be acting reasonably in refusing surgery that is painful

15  or dangerous. Thus, a patient's reasonable fear has been held to justify refusal of

16  treatment." *Nichols*, 556 F.2d at 933. Also, Plaintiff testified that he wanted to try

17  alternative forms of medicine before turning to surgery. (AR at 442.) Finally,

18  Plaintiff has had previous surgeries and several types of treatments that were

19  unsuccessful (*id.* at 359-60), which can also justify refusal of further surgical

20  treatment. *See Nichols*, 556 F.2d at 933 ("[A] history of unsuccessful treatment

21  may justify refusal of further treatment.").

22       Based on the above discussion, the Court cannot find that the ALJ made a

23  proper determination when he discredited Plaintiff's testimony based on a refusal

24  to undergo surgery without providing clear and convincing reasons.

25           **C.    This Case Is Remanded for Payment of Benefits.**

26       The law is well established that the decision whether to remand for further

27  proceedings or simply to award benefits is within the discretion of the Court. *See*,

28  *e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*,

1   888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th
2   Cir. 1981).  Remand is warranted where additional administrative proceedings
3   could remedy defects in the decision.  *Lewin*, 654 F.2d at 635.  Remand for the
4   payment of benefits is appropriate where no useful purpose would be served by
5   further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir.
6   1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d
7   1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt
8   of benefits, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

9          The Ninth Circuit also has held that "the district court should credit evidence
10  that was rejected during the administrative process and remand for an immediate
11  award of benefits if (1) the ALJ failed to provide legally sufficient reasons for
12  rejecting the evidence; (2) there are no outstanding issues that must be resolved
13  before a determination of disability can be made; and (3) it is clear from the record
14  that the ALJ would be required to find the claimant disabled were such evidence
15  credited."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also*
16  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)[7]; *Varney v. Sec'y of Health*
17  *& Human Servs.*, 859 F.2d 1396, 1988-1401 (9th Cir. 1988); *Pitzer v. Sullivan*, 908
18  F.2d 502, 506 (9th Cir. 1990); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.
19  1996); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989); *but see Connett v.*
20  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (the "crediting as true" doctrine is not
21  mandatory in the Ninth Circuit; remanding for reconsideration of the claimant's
22  credibility where the record contained insufficient findings as to whether the
23  claimant's testimony should be credited as true).

24         Under the foregoing authorities, when this test is met, the Court will take the
25
26  _____

27         [7]  In *Harman*, the Ninth Circuit noted that this three-part test "really
    constitutes a two part inquiry, wherein the third prong is a subcategory of the
28  second."  *Harman*, 211 F.3d at 1178 n.7.

1    improperly discredited testimony as true and not remand solely to allow the ALJ

2    another opportunity to make specific findings regarding that testimony.  This rule

3    applies not only to a claimant's improperly discredited excess pain and other

4    subjective symptom testimony, but also to improperly discredited opinions of a

5    treating or examining physician.

6          Here, the Court has found that the ALJ improperly discredited the opinions

7    of Dr. Kushner and Dr. Styner.  It is clear from the record that the ALJ would be

8    required to find Plaintiff disabled if their opinions were fully credited.  As noted

9    above, the VE testified at the hearing that an individual with the impairments

10   assessed by Dr. Styner would preclude all employment.  (AR at 452-53.)

11         The Court also concluded that the ALJ's discrediting of Plaintiff's testimony

12   to be unsupported by the substantial evidence in the record.  Again, when the

13   hypothetical to the VE incorporated the physical limitations to which Plaintiff

14   testified (which essentially mirrored those of Dr. Styner), the VE testified that such

15   limitations would preclude all employment.  (*Id*.)

16         Accordingly, it appears to the Court that this is a case where no useful

17   purpose would be served by further administrative proceedings, where the record

18   has been fully developed, and where remand would only unnecessarily delay the

19   receipt of benefits.

20

21                                    **ORDER**

22         Accordingly, IT IS HEREBY ORDERED that Judgment be entered

23   reversing the decision of the Commissioner of Social Security, and remanding this

24   matter for the payment of benefits.

25

26   DATED: March 3, 2008              _____
                                        HONORABLE JOHN C. RAYBURN
27                                      UNITED STATES MAGISTRATE JUDGE

28